**In re Thomas Edgar GARDNER, Debtor.**

**Bankruptcy No. 93–72699–W.**

United States Bankruptcy Court,
D. South Carolina.

March 6, 1996.

Kevin Campbell, Mt. Pleasant, SC, for debtor.

George R. Wieters, Hilton Head Island, SC, for Frank E. Fowler.

**ORDER**

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtor's Motion to Reopen pursuant to 11 U.S.C. § 350.[1] The sole objection to the Debtor's motion was filed by Frank E. Fowler ("Mr. Fowler"). After receiving the testimony, carefully considering all the evidence and weighing the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

7052 of the Federal Rules of Bankruptcy Procedure.[2]

## FINDINGS OF FACT

On April 5, 1990 and February 20, 1991, the Debtor, Mr. Fowler and Danise Toups ("Ms. Toups") executed two promissory notes to NCNB National Bank of North Carolina in the combined amount of $100,000.00. These notes were subsequently purchased by Mr. Fowler in 1991 and 1992. On May 27, 1993, the Debtor filed a Chapter 7 bankruptcy petition. The Debtor's Chapter 7 Schedules and Statements failed to list the debt to NCNB National Bank of North Carolina or Mr. Fowler. According to the testimony of the Debtor, he believed that Mr. Fowler had paid the debt and therefore his liability was extinguished and for that reason he intentionally did not list NCNB National Bank of North Carolina, Ms. Toups or Mr. Fowler in his bankruptcy Schedules and Statements.

The Chapter 7 Trustee subsequently declared the case to be a no-asset Chapter 7. On June 3, 1993, the Clerk of Court served the creditors with a Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates which contained a paragraph which states in capital letters "AT THIS TIME THERE APPEAR TO BE NO ASSETS AVAILABLE FROM WHICH PAYMENT MAY BE MADE TO UNSECURED CREDITORS. DO NOT FILE A PROOF OF CLAIM UNTIL YOU RECEIVE NOTICE TO DO SO." The Trustee did not discover assets to enable a distribution to creditors and there has been no further notice setting a bar date for the filing of proofs of claims. The case was then closed on November 30, 1993 at which time the Debtor received a discharge of all dischargeable debts.

On October 5, 1995, Mr. Fowler filed a Complaint against the Debtor in the Court of Common Pleas for the Fourteenth Judicial Circuit, State of South Carolina, County of Beaufort ("State Court") for the non-payment by Ms. Toups and the Debtor on the two notes or upon a right to contribution cause of action. The Debtor then filed the within Motion to Reopen the Chapter 7 bankruptcy on November 13, 1995 to add Mr. Fowler as a creditor.

The Court conducted a hearing on the motion, at which time, Mr. Fowler through counsel, stipulated that this debt was not subject to one of the exceptions to discharge pursuant to § 523(a)(2), (4) or (6). The parties also advised the Court that the State Court litigation remains pending.

## CONCLUSIONS OF LAW

■ Section 727(b) states that:

Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b). Pursuant to § 727(b) and § 502, a discharge will be granted for a debt even if it is not scheduled. The Court must then look to § 523(a)(3), which provides that a debt is excepted from discharge if it was:

neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of discharge-

---

2. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

ability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3).[3] Pursuant to § 521(1) the Debtor has a duty to file a schedule of all liabilities. The Court's records reflect that the debt to Mr. Fowler was not scheduled by the Debtor pursuant to this code section. However, unless the creditor had actual notice or knowledge of the bankruptcy case, the non-dischargeability limitations of § 523(a)(3) only apply to debts that were not scheduled in time to permit timely action by the creditor to protect his rights by proof of claim or, if § 523(a)(2), (4), or (b) are applicable, by the timely filing of a complaint seeking nondischargeability pursuant to those sections. *See* Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787. There is no evidence that Mr. Fowler had notice or actual knowledge of the bankruptcy case. Additionally, counsel for Mr. Fowler has stipulated that this is not a debt subject to the non-dischargeability provisions of § 523(a)(2), (4), or (6).

The quandary for the Court in this instance is that the Chapter 7 Trustee has declared this to be a no-asset Chapter 7 case, and neither made nor expects to make a distribution to creditors. Therefore, there has been no deadline established to file proofs of claims. Section 523(a)(3) excepts from discharge a debt if it was not scheduled in time to permit the timely filing of a proof of claim, however, because there is no bar date to file proofs of claims, there will never be a deadline for the timely filing of a proof of claim in this case and § 523(a)(3)(A) will never come into play. Therefore, pursuant to the provisions of § 727(b), it appears that the debt to Mr. Fowler, even if not scheduled, would be discharged and the reopening of the bankruptcy case at this time to add him as a creditor will have no effect.

While the Fourth Circuit Court of Appeals has not ruled on the precise issue of reopening no-asset Chapter 7 cases, other Bankruptcy Courts within the Fourth Circuit, including the Middle District of North Carolina and the Eastern District of Virginia, have recently denied similar motions to reopen as being futile. For Judge Stocks of the Bankruptcy Court for the Middle District of North Carolina, the critical and initial determination is whether the case in an asset or a no-asset case.

> Under the language of § 523(a)(3), the effect of a debtor's failure to schedule a creditor depends upon whether the case is a no-asset Chapter 7 case. This is true because in no-asset Chapter 7 cases no bar date is set, with the result that § 523(a)(3)(A) is never triggered in such cases. Stated another way, because there is no bar date in a no-asset Chapter 7 case, there never can be a time in such cases when it is too late "to permit timely filing of a proof of claim."

*In re Cates,* 183 B.R. 723 (Bkrtcy.M.D.N.C. 1995).

Judge Tice of the Eastern District of Virginia similarly has denied the reopening of a no-asset Chapter 7 bankruptcy case as being a futile act.

> The reopening of a closed no asset, no bar date, chapter 7 case to schedule omitted creditors serves no purpose. *See Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433, 1437 (9th Cir.1993); Lauren A. Helbling & Honorable Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am.Bankr.L.J. 33, 37–47 (Winter 1995). The omitted debt was either discharged upon the entry of the discharge order pursuant to 11 U.S.C. § 727 or is excepted from discharge pursuant to 11 U.S.C. § 523(a). *See In re Anderson,* 72 B.R. 495, 496–97 (Bankr.D.Minn.1987). There

---

**3.** The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 (enacted on October 22, 1994 and effective as to cases commenced on or after that date) added paragraph (15) to section 523(a) and amended section 523(c)(1) to include that paragraph. In conjunction with these amendments, Congress should have amended section 523(a)(3)(A) and (B) to include paragraph (15); this omission appears inadvertent. *See 3 Collier on Bankruptcy,* ¶ 523.13 fn 23(b) (15th ed.1991).

is nothing in the bankruptcy code that provides for a retroactive discharge. *In re Beezley,* 994 F.2d at 1434.

*In re Carberry,* 186 B.R. 401 (Bkrtcy.E.D.Va. 1995). *See also, In re Stecklow,* 144 B.R. 314, 315 (Bkrtcy.D.Md.1992), *In re Showalter,* Va. Lawyers Weekly, Mar. 7, 1994 at 1, Bankr.E.D.Va. No. 91–13947–AB (Feb. 4, 1994), *In re Walters,* No. 93–10610–AB (Bankr.E.D.Va. Feb. 16, 1993), *In re Hunter,* 116 B.R. 3, 5 (Bkrtcy.D.D.C.1990), *In re Thibodeau,* 136 B.R. 7, 10 (Bkrtcy.D.Mass.1992), *In re Shipman,* 137 B.R. 524 (Bkrtcy. N.D.Fla.1991), *In re Anderson,* 104 B.R. 427 (Bkrtcy.N.D.Fla.1989), *In re Tucker,* 143 B.R. 330 (Bkrtcy.W.D.N.Y.1992), *In re Humar,* 163 B.R. 296 (Bkrtcy.N.D.Ohio 1993) and *In re Musgraves,* 129 B.R. 119 (Bkrtcy. W.D.Tex.1991). *But see, Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322 (7th Cir.1983) (in a no-asset bankruptcy where proper notice has been given, a debtor may reopen the estate to add an omitted creditor "where there is no evidence of fraud or intentional design") and *In re Rosinski,* 759 F.2d 539 (6th Cir.1985) (a debtor may be prevented from amending his schedules only if it can be shown that the creditor was, in some manner, prejudiced or that the omission was "part of a scheme of fraud or intentional design."). *Also see, In re Woolard,* 190 B.R. 70 (Bkrtcy.E.D.Va.1995) (the court having found that the debtors intentionally omitted the creditor from their schedules and therefore the reopening of the no-asset Chapter 7 case under either the *Stark* or the *Beezley* line of cases should be denied, held "[a]ccordingly, if (the creditor's) claim is not of the type specified in § 523(a)(2), (a)(4), or (a)(6), it has already been discharged. If it is of the type specified in § 523(a)(2), (a)(4), or (a)(6), it has not been discharged. In either event, nothing is accomplished by reopening the case to file an amended schedule adding the omitted debt, and the court declines to do so.")

■ The reopening of a no-asset Chapter 7 case to add a creditor is not effective relief to address the issue of the dischargeability of a previously unscheduled pre-petition debt. In the instance when a genuine dispute arises in reference to the dischargeability of

the debt, apart from § 523(a)(3), there are several avenues available to the parties.

First, if [the creditor] pursues a lawsuit on the claim, Debtors can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either Debtors or [the creditor] can move to reopen this case for the purpose of filing a complaint to determine dischargeability. Third, Debtors can bring an action in this court to enforce the discharge injunction contained in § 524(a) against any creditor who is attempting to collect discharged claims. "The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt." *In re Mendiola,* [99 B.R. 864] *supra* at 870 [ (Bkrtcy.N.D.Ill.1989) ].

*In re Cates,* 183 B.R. at 725, fn. 2. In the within proceeding, there is a lawsuit currently pending in State Court in which a defense of discharge in bankruptcy could be raised. Also, the Debtor could file an adversary proceeding to obtain an order which clearly indicates the discharge of this indebtedness or even, under appropriate circumstances, an order to enforce the discharge injunction. Either of these paths would address the merits of the dischargeability of the debt.

While counsel for Mr. Fowler has stipulated that this is not a debt subject to the dischargeability provisions of § 523(a)(2), (4), or (6), and therefore not a likely issue for further litigation in this Court, Judge Stocks in citing the *In re Mendiola,* 99 B.R. 864 (Bankr.N.D.Ill.1989) opinion, noted, even if the debt in question does fall within one of the exceptions in § 523(a) other than § 523(a)(3), scheduling the debt at this time will not change or affect the status of the debt as regards dischargeability.

Section 523(a)(3)(B) is applicable only where a debt of the type described in subsections (2), (4) and (6) of § 523(a) was neither listed nor scheduled in time to permit the timely filing of a proof of claim and complaint to determine dischargeabili-

ty, and the creditor did not know about the case within that time. This provision is intended to protect the creditor's right to obtain a determination of the dischargeability of a debt in those instances where such right might otherwise be lost by reason of the passage of time. Again, however, whether the claim is added to the schedules has no effect upon the dischargeability of the claim under § 523(a)(2), (4), (6) or (15). Reopening a case to list a creditor will not extend the time to file complaints to determine dischargeability under these subsections of § 523(a), nor will reopening render a nondischargeable claim dischargeable. Either the unlisted creditor had actual, timely notice of the case or it did not. If the unlisted creditor had such notice and failed to file a timely complaint to determine dischargeability pursuant to subsections (2), (4), (6) or (15) of § 523(a), then the claim is discharged. On the other hand, if the unlisted creditor did not have such notice and the claim is one which is nondischargeable under § 523(a), then the claim is not discharged. However, reopening the case and amending the schedules after the case has been closed does not change the situation regarding dischargeability one iota.

*In re Cates,* 183 B.R. at 725.

### CONCLUSION

Pursuant to § 350(b), a case may be reopened to "accord relief to the debtor". The Debtor filed his Motion to Reopen for the purpose of amending his Schedules and Statements in his no-asset Chapter 7 case in order to discharge debts to Mr. Fowler and Ms. Toups. However, as outlined above and for the reasons stated in the *Cates* and *Carberry* opinions, reopening this case to add creditors will not accord the relief which the Debtor seeks.

The landmark decision from the Fourth Circuit on reopening of bankruptcy cases pursuant to § 350 is *Hawkins v. Landmark Finance Company,* 727 F.2d 324 (4th Cir. 1984). Pursuant to the *Hawkins* decision, which involved the reopening of a case in order to allow a lien avoidance proceeding, the determination to reopen a case is left to the sound discretion of the Court and de-

pends upon the circumstances of the case, including the prejudice to the creditor. For the reasons stated in the Conclusions of Law and the Findings of Fact and utilizing the *Hawkins* standard, it would appear that the reopening of the Debtor's case at this time would be futile and therefore, it is,

**ORDERED,** that the Debtor's Motion to Reopen is denied.

**AND IT IS SO ORDERED.**